Jay Sandon COOPER, Appellant

v.

William B. COCHRAN (Court Appointed Receiver/Trustee), DLJ Mortgage Capital, Inc., Select Portfolio Servicing, Inc., and Juanita Strickland, Kenneth Strickland, Carolyn A. Taylor, and Sandra Dasigenis (Substitute Trustees), Appellees.

No. 05–07–00760–CV.

Court of Appeals of Texas, Dallas.

April 9, 2009.

Jay Sandon Cooper, Plano, TX, for Appellant.

Thomas G. Yoxall, Steven E. Clark, Clark & Associates, W. Pruitt Ashworth, Attorney At Law, Dallas, TX, for Appellee.

Before Justices MORRIS, O'NEILL, and WHITTINGTON.[1]

## OPINION ON REHEARING

Opinion by Justice MORRIS.

■ This appeal was submitted before this Court on September 9, 2008. During the pendency of the appeal, and without informing this Court, appellant Jay Sandon Cooper filed for bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Texas. This Court issued its original opinion and judgment in the above referenced matter on December 1, 2008. *See Cooper v. Cochran,* 272 S.W.3d 756 (Tex.App.-Dallas 2008, no pet. h.). Because of the automatic stay that arose as a result of Cooper's filing for bankruptcy protection, our original opinion and judgment are void and without effect. *See Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex.1988) (per curiam).

An order of dismissal with prejudice was signed in the bankruptcy action on January 22, 2009. On March 9, Cooper filed a motion to set aside this court's December 1, 2008 judgment and, subject thereto, a motion to reconsider. In his motion, Cooper informed this Court for the first time of his bankruptcy action and the automatic stay. As our original judgment is void because it was issued during the automatic

1. The Honorable Mark Whittington, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

stay, we have issued an order on this same date setting aside the original judgment and withdrawing the original opinion. Because the bankruptcy stay is no longer in effect, we now restate our opinion and render a new judgment. Our restated *opinion immediately follows.*

## I.

In this appeal following a trial before the court without a jury, Jay Sandon Cooper challenges the trial court's judgment. The trial court ordered that Cooper take nothing on his claims for affirmative relief, granted monetary and equitable relief against him, and granted a claim for judicial foreclosure brought by DLJ Mortgage Capital, Inc. and Select Portfolio Servicing, Inc. Cooper presents fifteen issues arguing the judgment is supported by neither the pleadings nor the evidence and the trial court erred in ruling on matters of evidence and its application of the law. After reviewing the record and briefs on appeal, we conclude Cooper's arguments are without merit and we affirm the trial court's judgment.

## II.

This case arises out of the creation of the Jerolene Hubbard Irrevocable Trust by Jerolene Hubbard as grantor and Jay Sandon Cooper as trustee on May 4, 1998. On the same date the trust was created, Hubbard transferred several properties to Cooper by special warranty deed. Under the deeds, Hubbard retained a life estate in the properties including the right to receive rents, revenues, and profits from the properties. The terms of the trust state that "[Cooper] shall pay to or apply for the benefit of [Hubbard] as much of the net income and principal of the trust as [Cooper], in [his] sole and absolute discretion, determines to be necessary or advisable for [Hubbard's] education, health, maintenance and support."

Cooper, who is also Hubbard's grandson, testified that Hubbard offered the properties to him in exchange for his services in renovating and maintaining them. Cooper further stated that Hubbard expressed a desire to move from Austin to the Dallas area to live near Cooper and his family, possibly in the same house.

Cooper obtained a loan of $101,250 using as security a portion of one of the properties Hubbard deeded to him as security. The loan was evidenced by a deed of trust on the property and a note with Concordance Acceptance Corporation. Later, DLJ Mortgage Capital became the holder of the note and Select Portfolio Servicing, Inc. became the mortgage servicer. Cooper used some of the money from the loan to purchase a new, larger home in Plano, ostensibly to provide room for Hubbard. Hubbard did not move into the Plano house with Cooper but instead moved into Cooper's former home in Mesquite. Cooper charged Hubbard $950 per month in rent to live in the house.

According to William B. Cochran, Hubbard's brother, Cooper collected thousands of dollars in rent from the properties deeded to him by Hubbard but refused to use the money for Hubbard's benefit. Sometime after moving to Mesquite, Hubbard called Cochran and asked him to help her move back to Austin. Cooper stated he was unaware that Hubbard was unhappy or that she wanted to move back to Austin until after she left.

In October 1999, Cochran and Hubbard filed suit against Cooper. The trial court in that case signed a temporary injunction in November appointing Cochran as trustee and receiver for the properties. The trial court's order enjoined Cooper from selling or otherwise encumbering any of the properties and ordered him to transfer

the properties, including all improvements and title documents, to Cochran and the Jerolene Hubbard Irrevocable Trust. Cochran was instructed to receive the rental payments and other income generated by the properties and use the funds for the benefit of the properties and Hubbard. Cooper failed to transfer the properties as ordered.

Cooper eventually defaulted on his note. DLJ Mortgage and Select Portfolio began foreclosure proceedings and scheduled the sale of the property under the deed of trust. In addition, Cooper failed to pay the taxes owed on the properties deeded to him by Hubbard, resulting in foreclosure actions based on the tax liens. Cooper brought this suit against Cochran, DLJ Mortgage, and Select Portfolio as well Juanita Strickland, Kenneth Strickland, Carolyn A. Taylor, and Sandra L. Dasigenis as substitute trustees under the deed of trust securing the note.[2] Cooper alleged causes of action against Cochran for breach of fiduciary duty and trespass to try title. Cooper's claims against DLJ Mortgage and Select Portfolio included breach of contract, fraud, violation of the Texas Property Code, and insufficient notice of intent to accelerate the note. Cooper also sought declaratory judgments setting forth his rights under the property deeds, an injunction preventing foreclosure proceedings, and dissolution of the injunction signed in 1999.[3]

Phillip Michael Hufstedler, Hubbard's son and agent under a durable power of attorney, intervened in the suit and asserted claims for breach of duty and an accounting. Hufstedler also sought a declaratory judgment, constructive trust, and dissolution of the Jerolene Hubbard Irrevocable Trust. In response, Cooper's second amended petition sought a declaration that Hufstedler had no right or entitlement to the properties and asserted a claim against him for trespass to try title.

Cochran filed counterclaims against Cooper alleging contempt, breach of fiduciary duty, and fraud. Cochran sought specific performance, an accounting, a constructive trust, dissolution of the trust, and punitive damages. DLJ Mortgage and Select Portfolio filed counterclaims for breach of contract and unjust enrichment. The companies sought relief in the form of either judicial foreclosure, specific performance, restitution, or general damages. They also sought a declaratory judgment that their security interest in the property was superior to all other security interests.

The case was tried to the court without a jury. At the beginning of the trial, all parties stipulated that DLJ Mortgage and Select Portfolio had a valid security interest in the property described in the deed of trust, that Cooper was in default on his loan, and DLJ Mortgage and Select Portfolio had the right to foreclose on the property. The parties further stipulated that the security interest in the property would follow the land and be enforceable regardless of whether the property was transferred back to Hubbard or to Cochran as receiver. The parties then presented evidence on the remaining issues.

After hearing the evidence, the trial court concluded that the Jerolene Hubbard Irrevocable Trust was executed by Hubbard under duress and undue influence from Cooper and Cooper made representations and promises to Hubbard to induce her to enter into the trust knowing the

---

2. All claims against Juanita Strickland, Kenneth Strickland, Carolyn A. Taylor, and Sandra L. Dasigenis were dismissed with prejudice. Cooper does not appeal that ruling.

3. Cooper also alleged claims against Hubbard but did not name her as a party to the suit.

representations and promises were false at the time they were made. The court also found Cooper had breached his fiduciary duty to Hubbard under the trust and at least $41,500 of the loan Cooper obtained using the land Hubbard deeded to him was used to purchase Cooper's home in Plano from which Hubbard received no benefit. The court also found that DLJ Mortgage and Select Portfolio had a valid lien on the portion of the land used to secure Cooper's loan.

The trial court ordered that Cooper take nothing on his claims. The court dissolved the Jerolene Hubbard Irrevocable Trust and ordered the properties made the subject of the trust be conveyed to Cochran as court-appointed receiver for the benefit of Hubbard. The court further ordered that the properties be sold and the proceeds be used to satisfy DLJ Mortgage and Select Portfolio's lien as well as any outstanding tax liens. All remaining proceeds were to be used for Hubbard's benefit. The court placed a constructive trust on Cooper's Plano home in the amount of $41,500 for the benefit of Hubbard. Finally, the court awarded attorney's fees to Cochran, Hufstedler, DLJ Mortgage, and Select Porfolio. Cooper timely brought this appeal.

### III.

■ In Cooper's first issue on appeal, he argues the trial court erred in granting a declaratory judgment in favor of Cochran and Hufstedler when such relief is not supported by the live pleadings. Specifically, Cooper contends Cochran never requested a declaratory judgment and Hufstedler's request for a declaratory judgment was superceded by his filing a joint amended counterclaim with Cochran. After reviewing the trial court's judgment, however, we are unable to discern any relief granted to either Cochran or Hufstedler solely under the Uniform Declara-

tory Judgment Act. The judgment contains no affirmative declaration in favor of either Cochran or Hufstedler. And, although the trial court states in its findings of fact and conclusions of law that "Defendant Cochran and Intervenor Hufstedler have established under the Declaratory Judgment Act that [the trust] should be dissolved," Cochran and Hufstedler also sought dissolution of the trust in connection with their claims against Cooper for fraud and breach of duty. The trial court held in favor of Cochran and Hufstedler on both of those claims.

■ In addition, although the trial court's judgment awarded attorney's fees to Cochran and Hufstedler "based on their recovery under the Declaratory Judgment Act," the court had discretion to award fees to Cochran and Hufstedler based on their defense against Cooper's request for a declaratory judgment. Once the declaratory judgment statute has been invoked, the award of attorney's fees is not limited to the party seeking declaratory relief. *See Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc.,* 796 S.W.2d 763, 771 (Tex.App.-Dallas 1990, writ denied). All relief granted to Cooper and Hufstedler in the judgment was supported by the pleadings even absent a request by them for a declaratory judgment. Accordingly, we resolve Cooper's first issue against him.

■ In his next issue, Cooper contends the trial court erred in finding that the attorney who drafted the Jerolene Hubbard Irrevocable Trust, Michael H. Wald, represented Cooper and not Hubbard in the drafting process. Cooper argues that, without this finding, "it is doubtful that Appellees Cochran and Hufstedler can sustain their causes of action...." Cooper cites no authority and offers no substantive analysis to support his argument. Indeed, Cooper does not specify how the trial court's finding is critical to Cochran and

Hufstedler's claims. Cochran and Hufstedler contend that Hubbard was coerced into creating the trust by Cooper's threats and false promises. The fact that Wald may have represented Hubbard, either alone or together with Cooper, while drafting the trust does not, by itself, defeat these claims. Because Cooper has not adequately briefed his contention under the second issue, he presents nothing for us to review on his second issue. *See* Tex.R.App. P. 38.1(h).

In his third issue, Cooper contends the trial court abused its discretion when it did not compel Wald to testify in response to Cooper's direct examination. Cooper did not make an offer of proof at trial concerning the matters about which he expected Wald to testify. *See* Tex.R. Evid. 103. And although he filed a bill of exceptions with the trial court after judgment was rendered, Cooper did not follow the required procedures for a formal bill of exceptions. *See* Tex.R.App. P. 33.2(c). We conclude, therefore, that Cooper has not preserved his complaint about the exclusion of Wald's testimony for review. *See Bryan v. Watumull*, 230 S.W.3d 503, 516–17 (Tex.App.-Dallas 2007, pet. denied). We resolve Cooper's third issue against him.

In his fourth issue, Cooper contends the trial court erred in finding he had committed fraud. He first argues that Cochran and Hufstedler failed to establish their claim for fraud was filed within the limitations period. Although Cooper asserted the statute of limitations as an affirmative defense in his pleadings, he did not raise the issue at trial and there is no mention of the defense in the trial court's findings of fact and conclusions of law. A party asserting an affirmative defense in a trial before the court must request findings in support of the defense to avoid waiver. *See Alma Invs., Inc. v. Bahia*

*Mar Co–Owners Ass'n*, 999 S.W.2d 820, 822 (Tex.App.-Corpus Christi 1999, pet. denied). If the trial court's findings do not include any of the elements of the defense asserted, the party must specifically request additional findings relevant to the defense. *See id.* In this case, Cooper never requested findings from the court on his limitations defense. Nor did Cooper specifically request additional or amended findings of fact relevant to his limitations defense after the trial court issued its original findings of fact and conclusions of law. We conclude, therefore, that Cooper has waived any error with respect to his affirmative defense to fraud under the statute of limitations.

Cooper also argues that the pleadings did not give him adequate notice of the facts upon which the fraud claim against him was based. But, in the first amended counterclaim filed by Cochran and Hufstedler, it clearly states that the claim of fraud is based on Cooper's alleged promise to take care of Hubbard in exchange for Hubbard's creation of the trust and transfer of the properties in connection with the trust. Cochran and Hufstedler claim Cooper never intended to fulfill his promise and defrauded her of her ability to care for herself financially. This is sufficient to inform Cooper of the basis of Cochran and Hufstedler's fraud claim. Furthermore, although Cooper filed special exceptions generally stating that the counterclaims against him "do not state recognized causes of action in the State of Texas upon which relief can be granted," Cooper never obtained a hearing or ruling on his special exceptions. Accordingly, Cooper has failed to preserve this complaint for appellate review. *See Smith v. Grace*, 919 S.W.2d 673, 678 (Tex.App.-Dallas 1996, writ denied).

■ Cooper next challenges the legal sufficiency of the evidence supporting the trial court's fraud finding. Cooper argues there is no evidence that Hubbard relied upon any statements or promises he made, that Hubbard suffered any injury as a result of any alleged reliance, or that Cooper did not intend to perform his promises at the time he made them. We review a trial court's findings of fact for legal sufficiency under the same standard as jury findings. *See Krayem v. USRP (PAC), L.P.,* 194 S.W.3d 91, 93 (Tex.App.-Dallas 2006, pet. denied). An appellant attacking the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof must show there is no evidence to support the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence, as a whole, would enable reasonable and fair-minded people to differ in their conclusions. *See OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.,* 234 S.W.3d 726, 736 (Tex. App.-Dallas 2007, pet. denied). We view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *See OAIC,* 234 S.W.3d at 736.

■ The elements of fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998). Cooper concedes that a promise to do an act in the future is actionable fraud when the promise is made with the purpose of deceiving and no intention of performing the act. *See Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986).

In this case, both the testimony of the witnesses and the documentary evidence show that Cooper promised Hubbard he would take care of her. In a proposed agreement Cooper sent Hubbard before the trust was created, he stated that, in exchange for her transferring her assets to him, he would "provide love and affection, and for the needs and comforts of Jerolene Hubbard for her lifetime." Hubbard subsequently transferred several pieces of real estate to Cooper and created the trust under which Cooper was to make distributions to Hubbard "according to her respective needs." Hubbard then moved to Dallas to be closer to Cooper.

Cooper's ex-wife, Joy Farr, testified that, immediately after the transfer occurred, Cooper began treating Hubbard differently. Farr stated that, before the trust was established, Cooper gave Hubbard "anything she wanted." But after the trust was signed, "he let everything go." According to Farr, Cooper neglected Hubbard, failed to pay her bills, and allowed her car to be repossessed. He also failed to pay the taxes owed on the properties transferred to him in connection with the trust resulting in liens on the property. According to the testimony of several witnesses, Cooper used the assets he obtained from Hubbard for his own benefit.

We conclude the foregoing constitutes more than a scintilla of evidence to support the fraud claim alleged against Cooper.

The fact that Hubbard transferred property to Cooper, moved closer to him, and created a trust under which Cooper was to make distributions for her needs shortly after Cooper promised to take care of her is some evidence that Hubbard acted in reliance upon Cooper's promise. Cooper's immediate change in demeanor toward Hubbard upon her creation of the trust supports the conclusion that he never intended to fulfill his promise to care for her. And finally, the evidence that Hubbard transferred income producing assets to Cooper that he used solely for his own benefit demonstrates injury. Cooper's argument that the evidence is legally insufficient on these elements is without merit.

 Cooper also appears to challenge the legal sufficiency of the evidence supporting the trial court's finding that Hubbard executed the trust under duress and undue influence. Cooper states there is no evidence to show Hubbard acted against her own will or that she would have acted any differently had it not been for the alleged statements he made. Duress is shown if there is a threat or action taken without legal justification that is of such a character as to destroy the other party's free agency, overcome the party's free will, and cause her to do something that she would not otherwise have done and was not legally bound to do. *See McMahan v. Greenwood*, 108 S.W.3d 467, 482 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). The threat must also be imminent and the party have no present means of protection. *Id.* A party is unduly influenced to execute an instrument when there is such dominion and control exercised over the mind of the party, under the facts and circumstances then existing, as to overcome her free will and cause her to do something she would not otherwise have done. *See Decker v. Decker*, 192

S.W.3d 648, 651 (Tex.App.-Fort Worth 2006, no pet.).

The evidence presented at trial showed that Cooper performed various services for Hubbard, an elderly woman living by herself, before she signed the trust. Cooper encouraged Hubbard, his grandmother, to rely on him. In a letter Cooper sent to Hubbard, Cooper stated he had "demonstrated [his] commitment" to Hubbard, and it was "time for [her] to demonstrate [her] commitment to [him]." Cooper then stated that his continuing contributions of time and effort on her behalf were dependent upon her signing an agreement transferring her assets to him. Farr stated that Cooper told Hubbard "she would never see the light of day" or "he would put her in an insane asylum" if she didn't "sign the papers." We conclude this evidence is legally sufficient to support a finding of duress and undue influence.

 Finally, Cooper argues it was error to grant Cochran and Hufstedler the relief of recission because neither party requested such relief. Recission is a type of relief that must be specifically prayed for or the trial court cannot grant it. *Burnett v. James*, 564 S.W.2d 407, 409 (Tex. Civ.App.-Dallas 1978, writ dism'd). In their amended counterclaim, both Cochran and Hufstedler clearly request "the return of all property, cash, stocks, and other assets" transferred to Cooper by Hubbard and that Cooper "return to Hubbard, either as a hard asset or in monetary damages, all monies and properties to which Hubbard is entitled as a result of fraud." Furthermore, it was requested both in the counterclaim and Hufstedler's plea in intervention that the trust be dissolved and Cooper's interest in the trust be cancelled. These requests constitute prayers for recission sufficient to support the trial court's grant of this relief.

Based on the foregoing, we conclude Cooper's arguments under his fourth issue are without merit. We resolve Cooper's fourth issue against him.

■■■ In Cooper's fifth issue he contends the trial court erred in not construing the deeds and trust as a matter of law. And in his ninth issue, Cooper contends the trial court abused its discretion in failing to enforce the trust's "contest clause." We have already concluded there was legally sufficient evidence to support the trial court's findings of fraud, undue influence, and duress. We have also concluded that the pleadings properly support the trial court's judgment rescinding the deeds and trust. Accordingly, it was not error for the trial court to refuse to construe or enforce the properly rescinded deeds and trust. We resolve Cooper's fifth and ninth issues against him.[4]

■■■ Cooper contends in his sixth issue that the trial court abused its discretion in "placing unreasonable restraints on [his] right to alienate his interest in his property." It is unclear from his argument to what "restraint" Cooper is referring. Cooper provides no analysis regarding the manner of restraint, how his rights were affected, or why any alleged restraint was an abuse of discretion. Cooper goes on to list numerous findings by the trial court that he contends simply "are in error or are otherwise irrelevant to the judgment." Cooper, again, provides no analysis or support for his contention. Because Cooper has not adequately briefed his contentions under his sixth issue, he has failed to present anything for our review. *See* Tex. R.App. P. 38.1(h).

■■■ In his seventh issue, Cooper argues the trial court erred in finding he had breached a duty. Cooper argues neither Cochran nor Hufstedler established that the claim was filed within the statute of limitations and the pleadings do not support a finding of breach of duty. As with Cooper's challenge to the fraud finding on the basis of limitations, Cooper never requested findings from the trial court on his limitations defense to the breach of duty claim. Nor did Cooper specifically request additional or amended findings of fact relevant to his limitations defense after the trial court issued its original findings of fact and conclusions of law. We conclude, therefore, that Cooper has waived any error with respect to his affirmative defense to the breach of duty claim under the statute of limitations. *See Alma,* 999 S.W.2d at 822.

Cooper also argues that neither Cochran nor Hufstedler alleged facts sufficient to establish his alleged fiduciary relationship with Hubbard, that he breached any fiduciary duty, or that Hubbard suffered an injury. Cooper does not argue that Cochran and Hufstedler failed to allege a claim for breach of duty. He argues only that they failed to allege sufficient facts to support the claim. As stated above, however, Cooper failed to obtain a hearing or ruling on his special exceptions. This argument, therefore, has been waived. *See Smith,* 919 S.W.2d at 678.

Finally, Cooper argues the express terms of the trust defeat any finding of breach of duty. Cooper supplies no analysis or authority to support this contention. Absent adequate briefing, we conclude this argument presents nothing for our review. *See* Tex.R.App. P. 38.1(h).

---

4. Cooper also argues under his fifth issue that "non-payment of taxes by adverse possessor waives claim of ownership." For purposes of clarity and efficiency, we will address this argument, along with his other arguments regarding judicial foreclosure, together under issue ten.

In his eighth issue on appeal, Cooper contends the trial court erred in granting equitable relief. Cooper challenges the trial court's award of recission of the deeds, cancellation of the trust, and the constructive trust placed on his Plano home. To the extent Cooper's arguments with respect to the recission of the deeds and cancellation of the trust relate to whether the pleadings support such relief, we have addressed the argument under Cooper's fourth issue.

■ Cooper also suggests that recission of the deeds was improper because the deeds did not contain language that the property would revert to Hubbard if Cooper did not fulfill the terms of the trust. Cooper suggests the proper remedy was damages for breach of the agreement. In making this argument, Cooper relies upon breach of contract cases. *See e.g., Hearne v. Bradshaw*, 158 Tex. 453, 312 S.W.2d 948 (1958). The award of recission and cancellation was granted in this case, however, in connection with Cochran and Hufstedler's claims for fraud and breach of duty, not breach of an agreement. Accordingly, Cooper's argument is inapposite.

The constructive trust placed on Cooper's home in the amount of $41,500 was in response to testimony that Cooper obtained the money by mortgaging the property given to him by Hubbard and used it solely for his own benefit by applying it to his personal residence. Cooper again argues that Cochran and Hufstedler failed to show that their claim was filed within the limitations period. As we have discussed above, Cooper has waived any challenge to the judgment on the ground of limitations by failing to request findings on that issue. *See Alma*, 999 S.W.2d at 822.

■ Cooper also argues he had no notice that Cochran and Hufstedler were seeking to impose a lien against his spouse's community interest in his homestead. Cochran and Hufstedler's pleadings, however, specifically requested that the trial court "put a constructive trust on all assets which Plaintiff has which were owned by Hubbard and/or assets of Hubbard's which were used to purchase other assets for [Cooper's] benefit." Again, Cooper did not preserve error with respect to the sufficiency of the pleadings against him. *See Smith*, 919 S.W.2d at 678.

■ Finally, Cooper states that neither Cochran nor Hufstedler presented credible evidence to support a constructive trust. To the extent Cooper may be challenging the sufficiency of the evidence, he provides neither argument nor authority to support this contention. Cooper makes general statements regarding the law on the statute of frauds but offers no analysis to show why this law is relevant to his argument. Cooper also generally states, without any supporting argument, that Cochran and Hufstedler were required to join Cooper's spouse as a party to the suit. Absent adequate briefing, we conclude this argument presents nothing for our review. *See* TEX.R.APP. P. 38.1(h). We otherwise resolve Cooper's eighth issue against him.

■ In his tenth issue, Cooper contends the trial court erred in granting DLJ Mortgage and Select Portfolio's request for judicial foreclosure. At the beginning of trial, however, Cooper stipulated that DLJ Mortgage and Select Portfolio had a valid security interest in the property described in the deed of trust, that he was in default on his loan, and DLJ Mortgage and Select Portfolio had the right to foreclose on the property. A stipulation is a binding contract between the parties and the court. *See Solares v. Solares*, 232 S.W.3d 873, 883 (Tex.App.-Dallas 2007, no pet.). The stipulation serves as proof on an issue that would otherwise be tried, is conclusive on

the issue addressed, and estops the parties from claiming to the contrary. *See id.* Because Cooper stipulated in open court to all the facts giving rise to DLJ Mortgage and Select Portfolio's right to foreclose on the property, he cannot now challenge the trial court's ruling on this issue.

■ As part of his fifth issue, Cooper challenges the portion of the trial court's award to DLJ Mortgage and Select Portfolio representing the amount of taxes advanced to Cooper's escrow account under the mortgage agreement. Cooper argues that, pursuant to the temporary injunction signed in October 1999, he no longer had any responsibility to pay the taxes on the property. The temporary injunction ordered Cooper to transfer all of the properties given to him by Hubbard, including all improvements and title documents, to Cochran and the Jerolene Hubbard Irrevocable Trust. Cochran was instructed to receive the rental payments and other income generated by the properties and use the funds for the benefit of the properties and Hubbard. In arguing that this order relieved him of any duty to pay taxes on the properties, Cooper ignores the fact that he never transferred the properties to Cochran as required by the injunction.

Furthermore, Cooper was contractually obligated under the deed of trust to pay DLJ Mortgage the amounts necessary to cover the yearly taxes and assessments on the property securing the note. This obligation was not conditional. Cooper defaulted under the terms of the note and deed of trust and the tax payments held in the escrow account are properly recoverable as part of the amounts due and owing under the deed. We resolve these issues against Cooper.

In his eleventh issue, Cooper contends the trial court erred in granting a declaratory judgment in favor of Cochran and Hufstedler. As we stated earlier in this opinion, we have reviewed the trial court's judgment and we are unable to discern any relief granted to either Cochran or Hufstedler solely under the Uniform Declaratory Judgment Act. The judgment contains no affirmative declaration in favor of either Cochran or Hufstedler. Because it appears that neither Cochran nor Hufstedler was granted a declaratory judgment, we conclude Cooper's argument is moot. We resolve Cooper's eleventh issue against him.

■ In Cooper's twelfth issue, he contends the trial court abused its discretion in granting attorney's fees to appellees. Cooper first argues that the attorney's fees awarded by the trial court are not supported by statute or contract. This argument is clearly erroneous.

Cooper brought claims against Cochran and Hufstedler under the Declaratory Judgment Act thereby giving the trial court a statutory basis to award Cochran and Hufstedler attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008); *Hartford,* 796 S.W.2d at 771. The claims brought by DLJ Mortgage and Select Portfolio were based upon Cooper's default under the mortgage contract. Attorney's fees are recoverable for breach of contract claims. *See id.* § 38.001(8). In addition, the mortgage contract provided that Cooper would be responsible for paying the reasonable attorney's fees incurred in enforcing the note and protecting the lender's interests. The trial court, therefore, had both a statutory and a contractual basis to award attorney's fees to DLJ Mortgage and Select Portfolio.

■ Cooper next argues that appellees had a duty to segregate their fees among the various causes of action pleaded. Segregation is not necessary, however, where the claims are "inextricably intertwined." *See Tony Gullo Motors I,*

*L.P. v. Chapa,* 212 S.W.3d 299, 312 (Tex. 2006). When the legal services provided advance both a claim for which attorney's fees are recoverable and a claim for which they are not recoverable, the claims are so intertwined that they need not be segregated. *Id.* In this case, the legal services provided to appellees on their claims and defenses appear to be intertwined. Cooper fails to point to any specific instances of legal services provided to appellees for which segregation would be appropriate. Accordingly, we conclude Cooper has failed to show that the trial court erred in not requiring appellees to segregate their attorney's fees.

■ Finally, Cooper argues the attorney's fees awarded are excessive and unreasonable. In support of this argument, Cooper argues that Cochran and Hufstedler were provided legal services under a contingent fee agreement and the "fees escalated because of the outcome." Cooper appears to argue that the contingency fee arrangement alone renders the award unreasonable. Without more, however, the fact that attorney's fees are based on a contingent fee agreement does not make the fees requested or awarded unreasonable. *See Sloan v. Owners Ass'n of Westfield, Inc.,* 167 S.W.3d 401, 405 (Tex.App.-San Antonio 2005, no pet.).

Cooper challenges the amount of attorney's fees awarded to DLJ Mortgage and Select Portfolio on the ground that one of the two attorneys representing the companies at trial "was along to gain courtroom experience." Cooper fails to cite to anything in the record to support this contention. Furthermore, the record shows that DLJ Mortgage and Select Portfolio requested less than half of the attorney's

fees incurred during trial. Thus, any need to discount the fees was addressed. Cooper's arguments with respect to the award of attorney's fees are without merit. We resolve Cooper's twelfth issue against him.

■ In his thirteenth issue, Cooper contends the trial court erred in ruling against him on his affirmative defenses. Although Cooper lists many affirmative defenses the trial court allegedly erred in denying, he provides argument and authority in connection with only three: waiver, res judicata, and judicial estoppel.[5] Our analysis, therefore, is limited to the trial court's rulings on those three defenses.

■ With respect to his waiver defense, Cooper contends that DLJ Mortgage and Select Portfolio waived their right to foreclose by failing to pursue the option of collecting the rents due on the property directly from the tenants as provided by the mortgage contract. Cooper argues that if DLJ Mortgage and Select Portfolio had collected the rents due on the property, they would have ensured that the mortgage and escrow payments were made. According to Cooper, by their own failure to act, the companies led to the need to foreclose on the properties and thus have waived their right to foreclose. This argument fails for two reasons.

First, Cooper stipulated at trial that DLJ Mortgage and Select Portfolio had a right to judicial foreclosure on the property. Cooper is bound by this stipulation and it estops him from claiming to the contrary. *See Solares,* 232 S.W.3d at 883. Second, although the mortgage contract permits DLJ Mortgage and Select Portfolio to collect rents on the property, it does

---

5. In his reply brief, Cooper provides, for the first time, some argument with respect to the affirmative defense of laches. Because this argument is outside the permissible scope of the reply brief, we will not address these arguments. *See* TEX.R.APP. P. 38.3; *Smith v. Hues,* 540 S.W.2d 485, 489 (Tex.Civ.App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.).

not require them to do so before they are permitted to foreclose. The mortgage contract states that the lender "shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default ..." but "may do so at any time when a default occurs." The contract further states that the collection of rent from the property "shall not cure or waive any default or invalidate any other right or remedy of the Lender." Based on this contract language, the collection of rent, or failure to do so by DLJ Mortgage and Select Portfolio, has no impact on their right to foreclose. Cooper's waiver argument is without merit.

■ The basis for Cooper's res judicata argument is a plea in intervention filed by the Jerolene Hubbard Irrevocable Trust in Cooper's earlier divorce action with Farr. Cooper contends that Cochran and Hufstedler are estopped from asserting their claims in this lawsuit because the claims either were or could have been asserted in Cooper's suit for divorce. The plea in intervention filed by the trust asserted an interest in the subject matter of the case as "an equitable lien holder" in the couple's Plano home purchased and furnished with proceeds from the trust. Cooper suggests that all of Cochran and Hufstedler's claims could have been asserted along with this equitable claim.

■ Approximately one year after filing the intervention, however, the trust filed a motion for voluntary nonsuit. No affirmative claims were ever made against the trust in the divorce case. Cooper does not contend that the claims made by the trust in the divorce action or the claims made by Cochran and Hufstedler in this action were somehow mandatory in the suit for divorce. Where a party takes a voluntary nonsuit of its claims, res judicata does not attach. *See Bell v. Moores*, 832 S.W.2d 749, 755 (Tex.App.-Houston [14th Dist.] 1992, writ denied). We conclude, therefore, that the trial court did not err in ruling against Cooper on his defense of res judicata.

■ Cooper's assertion of judicial estoppel is based upon a claim filed by Hubbard in a bankruptcy action filed by Cooper on February 28, 2000. Hubbard filed a claim as a creditor for $61,650 for "services performed." Hubbard then moved for, and received from the bankruptcy court, relief from the automatic stay so she could pursue claims against Cooper for "monetary damages and equitable relief" in state court. Cooper contends that Hubbard's failure to include all of the causes of action asserted in this case in her initial bankruptcy claim as a creditor judicially estops Hubbard, and those in privity with her, from bringing the claims here.

■ For judicial estoppel to apply, a party must take an affirmative position that is successfully adopted by the court in an earlier proceeding and is contrary to the position the party now seeks to invoke. *See Cleaver v. Cleaver*, 140 S.W.3d 771, 775 (Tex.App.-Tyler 2004, no pet.). Cooper fails to show, and we have not found, any evidence in the record to establish that Hubbard took a position in the bankruptcy court that is contrary to the position taken in this case. Hubbard informed the court that she intended to pursue claims for monetary and equitable relief against Cooper and that those claims might affect Cooper's bankruptcy action when she sought to lift the stay. Futhermore, there is no evidence that Hubbard received any relief from the bankruptcy court other than the lifting of the stay. Absent any other evidence, we conclude Cooper failed to show the trial court erred in ruling against him on his defense of judicial estoppel. We resolve Cooper's thirteenth issue against him.

In his fourteenth issue, Cooper contends the trial court erred in refusing to strike the testimony of Farr, Cooper's former spouse. Cooper contends Farr's testimony was "so biased and motivated by hatred as to be unreliable." As fact finder in this case, however, the trial court was the sole judge of the credibility of the witness. *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex.App.-Dallas 1989, writ denied). Cooper was permitted to cross-examine Farr to reveal any alleged bias.

Cooper also contends the trial court erred in refusing to strike Farr's testimony on the ground of spousal privilege. There is no broad spousal privilege in civil cases. *See Marshall v. Ryder Sys., Inc.*, 928 S.W.2d 190, 195 (Tex.App.-Houston [14th Dist.] 1996, writ denied). The spousal privilege is limited in cases such as this to confidential communications between married persons not intended to be disclosed to any other person. *See* Tex.R. Evid. 504(a). Cooper concedes Farr stated that the conversations about which she testified took place in front of a third party. Cooper contends this is not sufficient to avoid the privilege, however, because there is no evidence corroborating the presence of the third party. Cooper cites no authority, and we have found none, requiring such corroboration. Because the evidence shows spousal privilege is not applicable, we conclude the trial court did not err in refusing to strike Farr's testimony. We resolve Cooper's fourteenth issue against him.

Finally, in his fifteenth issue, Cooper contends the trial court erred in denying him judgment on all of his claims. Cooper makes no additional argument but simply relies on the arguments made under the previous issues. Because we have resolved the previous issues against Cooper, we resolve this issue against him as well.

Based on the foregoing, we conclude Cooper has failed to show any reversible error committed by the trial court. We affirm the trial court's judgment.