Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-10-00242-CV

**PROFINANCE ASSOCIATES, INC.**,
Appellant

v.

Rochelle **COHEN-SAGI** and Annette Goldberg,
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CI-14159
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:   Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:  June 1, 2011

REVERSED AND REMANDED

This is the second time this contract dispute has been before this Court. In the first appeal, we reversed the trial court's judgment and rendered judgment that ProFinance Associates, Inc. take nothing against Rochelle Cohen-Sagi and Annette Goldberg (collectively "Cohen-Sagi"). *See Cohen-Sagi v. ProFinance Assocs., Inc.*, No. 04-08-00181-CV, 2009 WL 540217, at *1 (Tex. App.—San Antonio 2009, pet. denied). We also remanded the cause to the trial court "for a determination on attorney's fees pursuant to the Declaratory Judgments Act."

*See id.* at *5. On remand, the trial court awarded attorney's fees under the Declaratory Judgments Act to Cohen-Sagi. ProFinance now appeals this judgment on remand. We reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

### BACKGROUND

Cohen-Sagi owned two security companies: MHL, Inc., which was located in Laredo, Texas; and Central de Alarmas, S.A. de C.V. ("Adler"), which was located in Monterrey, Mexico. *Cohen-Sagi*, 2009 WL 540217, at *1. In October 1997, Cohen-Sagi and MHL entered into a non-exclusive sales advisory agreement with ProFinance, which provided that ProFinance would (1) identify one or more potential buyers for MHL and contact potential buyers to discuss the availability of MHL for sale; (2) transmit information provided by MHL to the potential buyers; and (3) if requested by MHL, assist in evaluating proposals submitted by interested bidders. *Id.* Further, Cohen-Sagi and MHL agreed to pay ProFinance a commission if "any other business" owned by Cohen-Sagi was sold to a "Protected Buyer" during the term of the agreement or within twenty-four months after the agreement terminated. *Id.* In January 1999, Cohen-Sagi sold MHL to ADT and subsequently paid a commission and related expenses to ProFinance pursuant to the terms of the agreement. *Id.*

In February 2004, Michael B. Jones, the president of ProFinance, contacted Cohen-Sagi via email and explained that an American security company, Diebold, was interested in buying alarm companies in Mexico. *Id.* On March 5, 2004, Cohen-Sagi told Jones that although she had been talking with another broker, if an agreement were to come to fruition with Diebold, ProFinance would be entitled to a commission "as agreed three years ago." However, after losing patience with ProFinance's inactivity and lack of progress in selling Adler, Cohen-Sagi executed an agreement with the law firm of Buchanan Ingersoll for assistance in the sale of Adler. *Id.*

Buchanan Ingersoll found six to seven potential buyers for Adler, one of which was Diebold. *Id.* On August 23, 2004, Cohen-Sagi emailed Jones, stating that she had "contracted with another broker" and thanked him for his efforts. *Id.* Jones responded that their agreement was now cancelled and reminded Cohen-Sagi that, under the provisions of the 1997 Agreement, his fee would be protected if Adler were sold to a Protected Buyer during the next twenty-four months. *Id.* In the spring of 2005, Diebold purchased Adler; all the paperwork regarding the sale was drafted by Buchanan Ingersoll and Diebold. *Id.*

After the sale, ProFinance made a demand upon Cohen-Sagi for payment of a commission in relation to the sale of Adler. *Id.* In response, Cohen-Sagi brought a declaratory judgment action against ProFinance, seeking a declaration that the 1997 Agreement contained a "procuring cause" condition and that because ProFinance was not the procuring cause of the sale of Adler to Diebold, Cohen-Sagi was not obligated to pay a commission to ProFinance. *Id.* ProFinance countersued for its commission and brought the following claims: breach of contract; quantum meruit; unjust enrichment; and, agency, ratification, and/or promissory estoppel. Like Cohen-Sagi, ProFinance also sought a declaratory judgment.

At trial, Cohen-Sagi testified that in 2001 she entered into an oral agreement with Jones providing that ProFinance would receive a commission if it "sold" Adler. *Id.* Thus, unlike the 1997 Agreement, which provided that ProFinance would receive a commission merely for identifying a Protected Buyer, the oral agreement required ProFinance to effectuate the sale of Adler. *Id.* Jones denied that such an oral agreement existed. *Id.* At the conclusion of trial, the jury made the following relevant findings:

1.  The parties intended for the 1997 Agreement to apply to the sale of Adler. (Question 1).

2.  Cohen-Sagi failed to comply with the 1997 Agreement. (Question 2).

3. With regard to the sale of Adler, ProFinance complied with the 1997 Agreement. (Question 3).

4. No causal connection existed between the actions of ProFinance and the sale of Adler to Diebold. (Question 8).

5. Cohen-Sagi and ProFinance entered into an oral agreement in 2001 in which Cohen-Sagi agreed to pay a commission to ProFinance if ProFinance sold Adler. (Question 9).

*Id.* Both parties then moved for judgment notwithstanding the verdict. *Id.* The trial court signed judgment for ProFinance, thus disregarding the jury's findings to Questions 8 and 9 as immaterial. *Id.* ProFinance was awarded damages, court costs, and attorney's fees. *Id.* Cohen-Sagi then appealed. *Id.*

On appeal, Cohen-Sagi argued that the trial court erred in disregarding the jury's answers to Questions 8 and 9 and in failing to rule as a matter of law that the 2001 Oral Agreement superseded the 1997 Agreement. *Id.* at *3. We agreed:

> While ProFinance denies the existence of a 2001 Oral Agreement, the jury considered the conflicting evidence and found a 2001 Oral Agreement existed. The jury further found that the terms of the 2001 Agreement required Cohen-Sagi and Goldberg to pay ProFinance a commission only if ProFinance's actions created some minimal interest by the purchaser which resulted in the ultimate sale of Adler and amounted to more than a mere solicitation or introduction. Because the 2001 Oral Agreement was later in time and its terms are inconsistent with the terms of the 1997 Agreement, the 2001 Oral Agreement is conclusively presumed to supersede and discharge the 1997 Agreement in regard to the sale of Adler. Once the jury found that an oral agreement existed, the jury's findings with respect to Questions 1, 2, and 3 became immaterial because the 1997 and 2001 agreements could not simultaneously exist. Accordingly, Cohen-Sagi and Goldberg's first issue is sustained.

*Id.* (citations omitted). We then concluded that "[b]ecause the jury found the parties entered into an oral agreement in 2001 and because its terms are inconsistent with the terms of the 1997 Agreement, the 2001 Agreement superseded the 1997 Agreement." *Id.* at *5. Thus, we reasoned

that "the jury's findings with regard to the 1997 Agreement are rendered immaterial and must be disregarded." *Id.* Accordingly, we reversed the judgment of the trial court and remanded the cause to the trial court "for a determination on attorney's fees pursuant to the Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008)."

On remand, the trial court awarded Cohen-Sagi attorney's fees in the amount of $130,698.20. ProFinance appeals.

## DISCUSSION

In its first issue, ProFinance argues that the trial court erred in awarding attorney's fees to Cohen-Sagi under the Texas Declaratory Judgments Act ("TDJA"), because Cohen-Sagi's requested declaration "was nothing more than a suit in avoidance of a contract." ProFinance emphasizes that Texas follows the American Rule, which prohibits fee awards unless expressly permitted by contract or statute. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 210-11 (Tex. 2006). And, ProFinance emphasizes that attorney's fees are not available under chapter 38 of the Texas Civil Practice and Remedies Code for the successful defense against another party's breach of contract claim. *See G.R.A.V.I.T.Y Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 551 (Tex. App.—Dallas 2005, no pet.). Thus, ProFinance argues that the trial court erred in awarding Cohen-Sagi attorney's fees under the TDJA, because even though Cohen-Sagi filed her lawsuit first, her declaratory judgment action was in essence a defense against ProFinance's breach of contract claim.

In support of this argument, ProFinance cites *MBM Financial Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660 (Tex. 2009). *MBM*, however, is distinguishable. In *MBM*, the Woodlands Operating Co. decided not to renew its lease of MBM's copiers, and asked MBM for end-of-term dates and instructions for return. *Id.* at 663. MBM employees provided the dates and

approved a draft termination letter from the Woodlands. *Id.* But when the actual termination letter arrived, MBM's president had unilaterally changed the dates so the notice would be untimely; thus, MBM's president demanded rent from the Woodlands for another year. *Id.* The Woodlands sued, asserting claims for breach of contract, fraud, and declaratory relief. *Id.* MBM counterclaimed for additional rent, though it later dropped its claim. *Id.* After a two-day bench trial, the trial court rendered judgment in favor of the Woodlands, awarding it $1,000 in damages and $145,091.59 in attorney's fees. *Id.* On appeal, MBM argued that there was no evidence to support $1,000 in damages. *Id.* The supreme court agreed. *Id.* at 664. Further, because there was no evidence to support damages, the supreme court held that the Woodlands' award of attorney's fees could not be affirmed under chapter 38 based on its breach of contract claim. *Id.* at 666.

The supreme court then turned to whether the Woodlands' award of attorney's fees could be affirmed based on its declaratory judgment action. *Id.* at 667. The court rejected MBM's argument that declaratory relief should not be available for contract claims that are "fully matured and predicated upon a terminated relationship." *Id.* In doing so, the court explained that the TDJA specifically states that relief is available in contract cases "before *or after* there has been a breach"; thus, "a matured breach is explicitly covered by the Act." *Id.* (emphasis in original).

The court then rejected MBM's argument that "declarations of non-liability should be barred in contract cases, just as they are in tort cases." *Id.* at 668. The court explained that while the "real" plaintiff in a tort cause of action is the injured party, in contract cases, "both parties often suffer injury if a contract collapses." *Id.* According to the court, the TDJA "specifically contemplates declarations that are negative (non-liability) as well as affirmative (liability)." *Id.* "And, historically, declarations of non-liability under a contract have been among the most

common suits filed under the Act, including: suits by insurers to declare non-liability under a duty-to-defend clause, suits by employees to declare non-liability under a covenant not to compete, and suits by a party to declare non-liability for higher or additional payments." *Id.* The court concluded that "[e]xtending the bar against declarations of non-liability from tort to contract cases would drastically handicap declaratory-judgment practice in Texas." *Id.*

Finally, the court turned to MBM's argument that declaratory judgments should be available only if there is no adequate alternative cause of action. *Id.* at 669. The court rejected this statement, noting "this has never been the rule in Texas." *Id.* The court explained that shortly after the Legislature passed the TDJA in 1943, the supreme court "adopted exactly the opposite rule, stating that the existence of another adequate remedy does not bar the right to maintain an action for declaratory judgment and finding this rule supported by better reasoning." *Id.* (internal quotation omitted). While the court "agreed the Act cannot be invoked when it would interfere with some other exclusive remedy or some other entity's exclusive jurisdiction," the court explained that "prohibiting declaratory judgments whenever a breach of contract claim is available would negate the Act's explicit terms covering such claims." *Id.* However, the court noted that "while declaratory relief may be obtained under the Act in all these circumstances, that does not mean attorney's fees can too." *Id.* The court explained that Texas has long followed the "American rule," which prohibits fee awards unless specifically provided by contract or statute. *Id.* The court noted that in contrast, the TDJA "allows fee awards to either party in all cases." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.009). Thus, "[i]f repleading a claim as a declaratory judgment could justify a fee award, attorney's fees would be available for all parties in all cases." *Id.* According to the court, such a rule "would repeal not only the American Rule but also the limits imposed on fee awards in other statutes." *Id.* "Accordingly, the rule is

that a party cannot use the Act as a vehicle to obtain otherwise impermissible attorney's fees." *Id.* The court explained that the TDJA "was originally intended as a speedy and effective remedy for settling disputes before substantial damages were incurred." *Id.* at 670 (internal quotation omitted). Thus, the Act "is intended to provide a remedy that is simpler and less harsh than coercive relief, if it appears that a declaration might terminate a potential controversy." *Id.* "But when a claim for declaratory relief *is merely tacked onto a standard suit based on a mature breach of contract*, allowing fees under Chapter 37 would frustrate the limits Chapter 38 imposes on such fee recoveries." *Id.* (emphasis added).

Turning to the facts of its case, the supreme court reasoned that because the Woodlands recovered no damages on its breach-of-contract claim, it could not recover attorney's fees under Chapter 38 and that "[a]llowing it to recover the same fees under Chapter 37 would frustrate the provisions and limitations of the neighboring chapter in the same Code." *Id.* Accordingly, the supreme court held that the Woodlands could not recover attorney's fees under the TDJA. *Id.*

Unlike the facts in *MBM*, in our case, Cohen-Sagi did not tack her declaratory judgment action onto a standard breach-of-contract claim. Cohen-Sagi did not seek declaratory relief as a means to obtain otherwise impermissible attorney's fees; declaratory relief was a means of obtaining the quickest and most effective relief pertaining to the dispute between her and ProFinance. *See Zuehl Airport Flying Community Owners Ass'n v. Meszler*, No. 04-09-00028-CV, 2010 WL 454931, at *6 (Tex. App.—San Antonio 2010, pet. denied) (explaining that the existence of another adequate remedy such as breach of contract does not preclude a declaratory judgment and upholding award of attorney's fees because declaratory relief was not sought as a means to obtain otherwise impermissible attorney's fees — it was a means of obtaining the quickest and most effective relief).

Moreover, we note that ProFinance brought its own claim for declaratory relief. Thus, the trial court also had discretion to award Cohen-Sagi attorney's fees based on its defense of ProFinance's declaratory judgment action. *See Cooper v. Cochran*, 288 S.W.3d 522, 530 (Tex. App.—Dallas 2009, no pet.) (holding that trial court had discretion to award attorney's fees to party based on its defense against other party's request for declaratory judgment because "[o]nce the declaratory judgment statute has been invoked, the award of attorney's fees is not limited to the party seeking declaratory relief"); *First City Nat'l Bank v. Concord Oil Co.*, 808 S.W.2d 133, 138 (Tex. App.—El Paso 1991, no writ) ("Moreover, even if Appellants had pled nothing more than a general denial with a request for attorney's fees, that would have been sufficient since, the Declaratory Judgments Act having been invoked by Appellee, the court in its discretion may award 'reasonable and necessary attorney's fees as are equitable and just.'"). We, therefore, overrule ProFinance's first issue.

In its second issue, ProFinance argues that in awarding attorney's fees to Cohen-Sagi, the trial court should not have relied solely on this court's mandate without first determining whether Cohen-Sagi should be awarded attorney's fees under the TDJA. In our first opinion, we concluded with the following: "We remand the case to the trial court *for a determination* on attorney's fees *pursuant to the Declaratory Judgments Act*. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008)." *Cohen-Sagi*, 2009 WL 540217, at *5 (emphasis added). Our mandate, however, stated that the cause was remanded "to the trial court *for calculation of attorney's fees*." (emphasis added). This imprecise language created confusion in the trial court, with ProFinance arguing that we intended the trial court to determine in its discretion whether attorney's fees should be awarded under the TDJA, and Cohen-Sagi arguing that the trial court

only had authority to calculate the amount of attorney's fees. The trial court agreed with Cohen-Sagi and only calculated the amount of attorney's fees to award to Cohen-Sagi.

For guidance in how to carry out the mandate of an appellate court, the courts should look not only to the mandate itself, but also to the opinion of the court. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *Tex. Parks & Wildlife Dep't v. Dearing*, 240 S.W.3d 330, 347 (Tex. App.—Austin 2007, pet. denied). From our opinion, it is clear we intended the trial court to exercise its discretion in determining whether attorney's fees should be awarded under the TDJA. We specifically cited to section 37.009 of the TDJA, which provides that the trial court "*may award* costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008) (emphasis added). Indeed, the TDJA "entrusts attorney fee awards to the *trial court's sound discretion*, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (emphasis added). As an appellate court, we review whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust. *Id.* We cannot, however, make the initial determination of whether attorney's fees should be awarded under the TDJA. We, therefore, sustain ProFinance's second issue.[1]

## CONCLUSION

Because the trial court did not exercise its discretion in determining whether attorney's fees should be awarded under the TDJA, we reverse the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.

Karen Angelini, Justice

---

[1] Having sustained this issue, we need not reach ProFinance's remaining issues.