**PSB, INC. d/b/a P.S. Business Interiors, Inc., Appellant,**

v.

**LIT INDUSTRIAL TEXAS LIMITED PARTNERSHIP, LIT PC, L.P. f/k/a PruCrow Industrial Properties, L.P., and Trammell Crow Dallas/Fort Worth, Ltd., Appellees.**

No. 05–05–01033–CV.

Court of Appeals of Texas, Dallas.

Oct. 26, 2006.

Rehearing Overruled March 15, 2007.

Truman E. Spring, Dallas, for appellant.

Howard C. Rubin, Kessler & Collins, Dallas, for appellees.

Before Justices BRIDGES, FITZGERALD, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

PSB, Inc. appeals the judgment rendered against it in favor of LIT Industrial Texas Limited Partnership, LIT PC, L.P. f/k/a PruCrow Industrial Properties, L.P., and Trammell Crow Dallas/Fort Worth, Ltd. for $36,481.53 plus pre-and post-judgment interest and attorney's fees. On appeal, PSB contends the trial court erred in granting appellees' motion for summary judgment on LIT PC's breach of contract cause of action for unpaid rents and in granting appellees' motion for summary judgment on PSB's causes of action for fraud and business disparagement. PSB also contends the trial court erred in awarding any pre-judgment interest and that the trial court erred by awarding post-judgment interest at the rate of fifteen percent instead of five percent. We affirm the trial court's judgment.

## BACKGROUND

PSB, which is wholly owned by Jack Schure, sells new and used office furniture, both retail and wholesale. In 1997, it had a facility on leased property at the intersection of Miller Road and LBJ freeway in Dallas. The property manager was Trammell Crow. PSB used the wall of the building facing LBJ as a sign. This "sign" was about 100 feet wide with six-foot red lettering on a white background stating "PS Business Interiors" "new and used office furniture" and listed the phone number. The sign was illuminated by lights attached to the building. In late 1997, PSB was notified that Dallas Area Rapid Transit Authority (DART) had purchased the property to build a light-rail station. DART informed PSB it was terminating the lease.

Forced to move by DART, PSB contacted a real estate agent, Charles Lester, to find a suitable property. PSB required that its new space be within a mile of the old space and be the same kind of space: located on LBJ freeway, have 25,000 square feet, air conditioned, and have prominent signage. Lester found a space at the same intersection, also managed by Trammell Crow, of the correct size that was air conditioned. The new location was owned by PruCrow.

Signage became a critical issue in the resulting lawsuit. When Trammell Crow's leasing agent, Dan Tatsch, showed Schure the property, Schure asked Tatsch if PSB could put up a sign comparable to that at the old location. According to Schure's affidavit, Tatsch "assured me that I would be allowed to utilize illuminated signage setting forth the same wording as at the Former Location, and of a comparable size."

On March 31, 1998, PSB and PruCrow signed a five-year lease beginning July 1, 1998 and running through June 30, 2003. Although PSB conducted both retail and wholesale operations, paragraph 3 of the lease limited selling to wholesale sales. Tatsch told Schure that provision was to circumvent any zoning/classification concerns with governmental entities and there would be no impediment to retail sales. Paragraph 13 prohibited the erecting or installation of any exterior signs "without Landlord's prior written consent."

Besides the standard form-lease provisions, constituting the first 39 paragraphs of the lease, the lease also contained a "Special Provision for PS Business Interiors," constituting paragraphs 40 through 44. Paragraph 42 stated PSB "shall be allowed to install a monument sign along Miller Road" with PruCrow having "the sole right to determine the location of the

monument sign" and subject to PruCrow's approval of the plans for the sign. The "Special Provision" of the lease did not expressly authorize a sign on the wall of the building facing LBJ.

In July 1998, PSB took possession of the premises under the lease. PSB applied to PruCrow for a sign on the wall of the building facing LBJ. PSB's request for a lighted sign of the size and with the text on the old property was rejected. In August 1998, PruCrow approved, and PSB had installed, an unilluminated sign with letters only four feet high that said simply "Office Furniture." Over the next four years, PSB made more applications to PruCrow for signs on the wall facing LBJ with text including the business name and telephone number and larger and illuminated letters. All these requests for signage were rejected. In a letter to PSB dated January 25, 2000, the senior property manager for Trammell Crow explained the rejections, stating that an illuminated sign with the telephone number "constitutes advertising, which is not the intent of signage at an industrial warehouse facility."

In January 2003, PruCrow's name changed to LIT PC, L.P. In February 2003, PSB stopped paying rent and, on June 14, 2003, about two weeks before the end of the lease, it vacated the premises. LIT PC subsequently posted two notices on the front door of the property; the first was a demand for payment of arrears threatening repossession of the premises, and the second was notice that the locks had been changed threatening prosecution against anyone attempting to enter.

On September 5, 2003, LIT Industrial filed suit in a Dallas county court at law against Jack Schure d/b/a PS Business Interiors. Schure answered on October 8, 2003 with a general denial and a verified denial that he was not liable in the capacity in which he was sued. On January 29, 2004, PSB filed the current suit against appellees in district court against LIT Industrial, LIT PC, and Trammell Crow. On February 4, 2004, the county court at law dismissed the suit brought by LIT Industrial at its request.

PSB's suit in district court asserted several causes of action, including fraud and business disparagement.[1] On February 20, 2004, appellees filed a general denial and affirmative defenses. On February 23, 2004, LIT PC filed a counterclaim for breach of the lease seeking actual damages, pre-and post-judgment interest, and attorney's fees.

LIT PC moved for partial summary judgment, asserting it had proved as a matter of law its entitlement to judgment on its breach-of-the-lease claim. All three appellees moved for summary judgment on PSB's causes of action. The trial court granted appellees' motion for summary judgment.

### SUMMARY JUDGMENT

In its first and second issues, PSB asserts the trial court erred in granting appellees' motion for summary judgment under paragraphs (c) and (i) of rule of civil procedure 166a.[2]

1. PSB also asserted claims for breach of contract and unjust enrichment or quantum meruit; however, those claims are not asserted on appeal.

2. PSB's first issue asserts the trial court erred in granting the motion for summary judgment under rule 166a(c) and concerns PSB's affir-

mative defense of fraudulent inducement to LIT PC's cause of action for breach of the lease and appellees' statute of limitations defense to PSB's cause of action for fraud. PSB's second issue asserts the trial court erred in granting the motion for summary judgment under rule 166a(i) and concerns

## Standards of Review

A party moving for summary judgment under rule 166a(c) has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 872 (Tex.2005). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *Dallas Firefighters Ass'n v. Booth Research Group, Inc.*, 156 S.W.3d 188, 192 (Tex.App.-Dallas 2005, pet. denied).

After adequate time for discovery and without presenting summary judgment evidence, a party is permitted by rule of civil procedure 166a(i) to move for summary judgment on the ground that no evidence supports one or more essential specified elements of an adverse party's claim or defense on which the adverse party would have the burden of proof at trial. *See* Tex.R. Civ. P. 166a(i). If the adverse party is unable to produce summary judgment evidence raising a genuine issue of material fact on the challenged elements, the trial court must grant the motion. *See id.* We consider all the evidence in the light most favorable to the adverse party, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex.2006) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005).

## PSB's Breach of the Lease

■ PSB contends the trial court erred in granting LIT PC's motion for summary judgment on LIT PC's cause of action for breach of the lease.

■ PSB argues the trial court erred in granting LIT PC's motion for summary judgment on its claim that PSB breached the lease because LIT PC failed to disprove as a matter of law PSB's affirmative defense of fraudulent inducement for PSB to enter into the contract. "The elements of fraud are a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990). PSB asserts the fraud was the representations (1) that PSB could have the same kind of signage it had at the old location, and (2) that PSB could conduct retail sales, but the lease limited sales to wholesale. LIT PC asserts that even if PSB was fraudulently induced into the lease, PSB ratified the lease by continuing with the lease and not seeking rescission after it learned of the fraud.

■ A contract procured by fraud is voidable, not void. *Harris v. Archer*, 134 S.W.3d 411, 427 (Tex.App.-Amarillo 2004, pet. denied). If a party fraudulently induced to enter into a contract continues to receive benefits under the contract after learning of the fraud or otherwise engages in conduct recognizing the agreement as subsisting and binding, then the party has ratified the agreement and waived any right to assert the fraud as a basis to avoid the agreement. *Rosenbaum v. Tex. Bldg. & Mortg. Co.*, 140 Tex. 325, 329, 167 S.W.2d 506, 508 (1943); *Harris*, 134 S.W.3d at 427. "An express ratification is not necessary; any act based upon a recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it has the effect of waiving the right of rescission." *Rosenbaum*, 140 Tex.

PSB's causes of action for business disparagement and fraud.

at 329, 167 S.W.2d at 508; *Harris,* 134 S.W.3d at 427.

LIT PC's breach of the lease claim is based on PSB's failure to pay rent in February through June 2003. PSB admits in its brief that the January 25, 2000 letter denying its request for an illuminated sign with its telephone number put it on notice of the fraud concerning the signage. However, PSB asserts it could not have learned of the fraud concerning the limitation of the usage of the property prohibiting retail sales until it saw the notice posted to the door on June 2, 2003, which stated, "You were advised of the signage restrictions at this type of facility (warehouse distribution building). . . ." However, the January 25, 2000 letter stated,

> We have reviewed your request for the change in signage at the above referenced facility, but regret that we cannot approve the requested deviations from the originally approved signage installation. We feel that illuminated signage as well as the addition of the business phone number constitutes advertising, which is not the intent of signage at an industrial warehouse facility.

This letter informed PSB both (1) that it would not be permitted to have signage of the type it had at the old location and (2) that the intended usage of the facility was as "an industrial warehouse facility," not a retail sales establishment.

Despite knowledge of the alleged misrepresentations, PSB did not seek to rescind the contract but continued to recognize the contract as effective. Schure testified in his deposition,

> When it became apparent they weren't going to honor their commitment to me, there wasn't much I could do in terms of writing a letter. I had one or two choices, to leave the building or stay there. If I'm staying there, my—I felt that I—maybe if I continued to stay

there and showed my—my commitment, that they would, in turn, acquiesce eventually into dealing with us on the sign issue.

Likewise, in his affidavit, Schure testified that after PSB's requests for larger signs were rejected, "PSB did not abandon the Premises but paid rents each month and faithfully performed its other obligations as tenant under the Lease for over four and one-half years of the five-year term." As this testimony shows, PSB knew of the alleged fraud yet decided to remain in the building under the lease. Its conduct after the January 25, 2000 letter was inconsistent with an intention of avoiding the lease, and it ratified the contract.

We conclude LIT PC conclusively established PSB ratified the contract's validity after January 25, 2000 and that it is entitled to judgment as a matter of law on its claim for PSB's breach of the lease in 2003. Because of our ruling on this issue, we need not address PSB's argument that the lease's merger clause did not as a matter of law defeat PSB's fraudulent inducement defense.

## Business Disparagement

PSB argues the trial court erred in granting appellees' motion for summary judgment on its cause of action for business disparagement. This cause of action was based on the two notices posted to the door of the facility in June 2003 after PSB had vacated the premises.

Appellees' moved for summary judgment under rule 166a(i), asserting PSB had no evidence of several elements, including no evidence "[t]hat any publication caused Plaintiff to suffer any pecuniary loss." In its response, PSB stated it presented evidence of damages in "affidavit testimony from PSB representatives." In its brief on appeal, PSB cites to paragraph

15 of Schure's affidavit and paragraph 6 of the affidavit of William Elliott, the Dallas Manager for PSB. Appellees objected to the damages evidence in these two paragraphs, and the trial court sustained the objections. PSB does not assert on appeal any error in the trial court's rulings on these objections. With no other evidence of damages before it referenced by PSB in its response,[3] we conclude the trial court did not err in granting appellees' no-evidence motion for summary judgment on PSB's claim for business disparagement.

### Fraud

■ PSB asserts the trial court erred in granting appellees' motion for summary judgment on its claim for fraud. Like its fraudulent-inducement affirmative defense, PSB's fraud claims asserts appellees misrepresented that retail sales could be conducted in the new location and that PSB could have the same type of sign it had at the old location.

■ Appellees moved for summary judgment on several grounds, including under rule 166a(c) that they conclusively established the affirmative defense of limitations. "A person must bring suit on the following actions not later than four years after the day the cause of action accrues: ... (4) fraud...." TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (Vernon 2002). A claim for fraud does not accrue until the plaintiff discovers, or in the exercise of reasonable care and diligence should have discovered, the fraud. *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex.1997); *Anderson v. Cocheu,* 176 S.W.3d 685, 690 (Tex.App.-Dallas 2005, pet. denied).

PSB knew from the January 25, 2000 letter that a sign comparable to that at the old location would not be approved and that appellees did not consider the leased premises a retail sales establishment. At that point, PSB's fraud cause of action for both alleged misrepresentations accrued. However, PSB did not file its fraud cause of action until January 29, 2004, more than four years after the accrual of the cause of action.

■ PSB argues that under section 16.069 of the civil practice and remedies code, the statute of limitations does not apply to its causes of action because they were counterclaims to the county-court-at-law suit filed by LIT PC. Section 16.069 provides,

(a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

(b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.069 (Vernon 1997). Even assuming this provision could apply in separate lawsuits, we conclude PSB has failed to meet two of the requirements. First, PSB, Inc. d/b/a PS Business Interiors, Inc. was not a party to LIT PC's suit filed in the county court at law; the defendant in that lawsuit was Jack Schure d/b/a PS Business Interiors, not PSB, Inc. Second, PSB did not bring its fraud claim "counterclaim" within 30 days of when its answer was required in LIT PC's county court at law suit.[4] Accordingly, section 16.069 does not apply.

---

3. In its brief on appeal, PSB also cites to three pages Lester's deposition. However, those pages contain no evidence of damages.

4. PSB's answer was due on the Monday following twenty days after PSB was served with the suit. *See* TEX.R. CIV. P. 15, 99. The record does not show the date PSB was served, but it

We conclude the trial court did not err in granting appellees' motion for summary judgment on PSB's fraud cause of action.

### Conclusion

We conclude the trial court did not err in granting appellees' motion for summary judgment under rule 166a(c) and 166(a)(i). We overrule PSB's first and second issues.

### INTEREST

In the third issue, PSB contends the trial court erred in including pre-judgment interest in the final judgment and that the court used the incorrect rate in setting post-judgment interest.

Paragraph 37(i) of the lease states amounts owing under the lease "shall bear interest from such due date until paid in full at the lesser of the highest rate permitted by applicable law or 15 percent per year." In the interlocutory order granting partial summary judgment, the trial court awarded LIT PC "the sum of $36,481.53, plus interest at a rate of five percent (5%) per annum from this date until paid." After the parties stipulated to the amount of attorney's fees, the trial court entered final judgment awarding LIT PC actual damages, attorney's fees, pre-judgment interest of $7809.79, and post-judgment interest "at the contractual rate of fifteen percent (15%) per annum from date of judgment until paid." Without citing any authority, PSB asserts the trial court could not vary the interest provisions contained in the interlocutory partial summary judgment when it rendered the final judgment.

PSB's brief contains no legal analysis or authority in support its position that the

trial could not alter the provisions of its interlocutory order when it rendered its final judgment. Nor does PSB argue or cite authority showing that fifteen percent was not the correct rate of pre- and post-judgment interest. *See* TEX. FIN.CODE ANN. § 304.002 (Vernon 2006) (money judgment on contract that provides for interest earns post-judgment interest at lesser of rate specified in contract or 18 percent). Accordingly, this argument is not properly briefed, and the asserted error is waived. *See* TEX.R.APP. P. 38.1(h); *Okere v. Chase Manhattan Mortg. Corp.*, 191 S.W.3d 910, 912 (Tex.App.-Dallas 2006, no pet.); *Dallas Firefighters Ass'n*, 156 S.W.3d at 196. We overrule PSB's third issue.

We affirm the trial court's judgment.

filed its answer on October 8, 2003. Accordingly, service could have been no later than October 8, 2003. The Monday following twenty days after October 8, 2003 is November 3, 2003. Thus, even if section 16.069 could apply to separate suits, PSB's claims had to be filed by December 3, 2003 to avoid limitations. PSB did not file its fraud claim until January 29, 2004. Section 16.069 provides an exception to the applicability of statutes of limitations; however, it is not a tolling provision.