**Affirmed in part; Reversed in Part and Opinion Filed August 3, 2022**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

_____

## No. 05-21-00158-CV
_____

**2100 RICCHI, LLC, Appellant and Cross-Appellee**
**V.**
**HILLIARD OFFICE SOLUTIONS OF TEXAS, LTD. AND**
**THE HILLIARD COMPANIES, LLC, Appellees and Cross-Appellants**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-02672**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

This is a cross-appeal arising out of a commercial lease dispute. After a bench trial, the trial court rendered judgment awarding damages to each party, with a net award to the landlord. Appellant and cross-appellee is the landlord; appellees and cross-appellants are the tenant and its general partner. In four issues, Landlord argues the trial court erred by failing to award prejudgment and postjudgment interest and attorney's fees and by awarding actual and exemplary damages to Tenant. In two issues, Tenant argues the trial court's award of damages to Landlord was error

because of Landlord's fraudulent inducement and material breaches of the lease. We affirm in part and reverse and remand in part.

## BACKGROUND

The trial court's detailed findings of fact and conclusions of law are well-known to the parties, and we do not repeat them here. In summary, the parties' dispute arises from a January 29, 2015 "Office Lease Proposal" and a 60-month lease the parties signed in April 2015, under which Tenant occupied 27,857 square feet in an office building in Farmer's Branch. The parties agreed to share the construction costs incurred to bring the premises to "turnkey" condition; Landlord agreed to pay 70 percent of the costs and Tenant agreed to pay 30 percent. Under both the proposal and the lease, all remodeling would be billed at Landlord's "book cost" and Tenant had a right to audit "any and all records" regarding the construction costs.

The lease required timely monthly rental payments of $32,499.83 for the first two years of the lease term. Tenant was required to pay rent "without deduction or set off." Tenant's obligation to pay rent was "not dependent upon the condition of the premises or the performance by Landlord of its obligations hereunder" and continued "notwithstanding any breach by Landlord of its duties or obligations hereunder, whether express or implied." The sole exception permitted Tenant to abate rent if Tenant was "prevented from making reasonable use of the Premises for more than 10 consecutive days" by the unavailability of certain defined "services."

Tenant moved into the premises and the 60-month lease period began on November 1, 2015. Tenant paid rent for the first eleven months of the lease term. Tenant stopped paying rent for an eight-month period between October 2016 and May 2017, but continued to occupy and use the premises. Landlord filed this suit in March 2017 for breach of contract and a parallel suit for eviction in justice court in June 2017. Tenant resumed paying rent in June 2017 through the time of trial in January 2020, and continuously operated its business out of the premises between November 2015 and the time of trial.

Tenant filed a counterclaim alleging that Landlord "knowingly and intentionally misrepresented the improvement expenses" it submitted to Tenant for payment under the lease. Tenant introduced evidence at trial that Landlord marked up remodeling estimates for the premises before sending them to Tenant, did not inform Tenant of the markup, never intended to bill Tenant at Landlord's book cost as the lease required, included fees and expenses unconnected to the project, and failed to provide records when Tenant requested them.

Because Tenant was unable to conduct its own internal audit without the necessary records, it agreed to the appointment of an auditor who would review and reconcile the accounting records and report his findings to the trial court. The auditor disallowed 157 of the 245 items or categories of construction costs analyzed, and calculated a $9,322.85 overpayment by Tenant. Landlord credited this amount to Tenant by subtracting it from the amount of rent due.

The case proceeded to trial before the court. Leobardo Trevino, Landlord's CEO, and Sterling Hilliard, Tenant's President, testified, and the "Auditor Report of Bradford L. Bright" was admitted into evidence with some fifty other exhibits. Both parties filed written closing arguments, proposed findings of fact and conclusions of law, affidavits in support of their attorney's fees, and motions for judgment. Landlord also filed a request for amended findings of fact and conclusions of law.

The trial court rendered judgment awarding Landlord actual damages in the amount of $258,257.56, representing the amount of unpaid rent due after crediting Tenant's overpayment of its share of construction costs. The trial court awarded Tenant actual damages of $62,077.50 on its fraud claim, representing Tenant's half of the auditor's fee, and exemplary damages of $90,469.01. The trial court did not award attorney's fees to Landlord, and the judgment does not include an award of prejudgment or postjudgment interest. This cross-appeal followed.

### STANDARDS OF REVIEW

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Id.* We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Id.* The applicable standard

–4–

of review depends upon which party bore the burden of proof at trial. We will discuss the pertinent standard in our consideration of each issue.

In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Id*. As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *Id*. (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

## DISCUSSION

We first address Tenant's issues regarding enforceability of the Lease before considering Landlord's issues regarding amounts due under the Lease.

### A. Tenant's Cross-Issues

#### 1. Standards of review

Tenant challenges the legal and factual sufficiency of the evidence regarding issues on which it had the burden of proof. Accordingly, Tenant must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). The appellant must show that there is no evidence to support the fact finder's finding and that the evidence conclusively establishes the opposite of the finding. *See id*. The final test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827.

When a party challenges the factual sufficiency of the evidence supporting a finding for which it had the burden of proof, the party must demonstrate that the finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.,* 46 S.W.3d at 242. In a factual sufficiency review, an appellate court considers and weighs all the evidence both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex. 1998). We do not set the finding aside unless the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Dow Chem. Co.,* 46 S.W.3d at 242.

We review de novo a trial court's conclusions of law. *Fulgham*, 349 S.W.3d at 157. We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.* at 157–58. Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id.* at 158. Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.*

## 2.      Fraud in the inducement

In its first cross-issue, Tenant contends the trial court erred by awarding damages to Landlord because Landlord's fraud in the inducement precludes enforcement of the lease. We construe this cross-issue as a complaint that Tenant

–6–

established both its counterclaim for fraud in the inducement and its right to the remedy of rescission as a matter of law. *See Dow Chem. Co.*, 46 S.W.3d at 241.

A common-law fraud claim requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (internal quotation omitted). "Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Id.*

Fraudulent inducement arises only in the context of a contract. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). "In a fraudulent-inducement claim, the 'misrepresentation' occurs when the defendant falsely promises to perform a future act while having no present intent to perform it." *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019). "The plaintiff's 'reliance' on the false promise 'induces' the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise." *Id.*; *Mundheim v. Lepp*, No. 05-19-01490-CV, 2021 WL 1921122, at *3 (Tex. App.—Dallas May 13, 2021, pet. denied) (mem. op.). A merger clause, standing alone, does not prevent a party from suing for fraudulent inducement. *Int'l Bus. Machines Corp.*, 573 S.W.3d at 229.

Rescission of a contract is "an equitable remedy that operates to extinguish a contract that is legally valid, but must be set aside because of fraud, mistake, or some other reason to avoid unjust enrichment." *Neese v. Lyon*, 479 S.W.3d 368, 389 (Tex. App.—Dallas 2015, no pet.). To be entitled to the equitable remedy of rescission, "a party must show either (1) that he and the other party are in the *status quo, i.e.*, that he is not retaining benefits under the instrument without restoration to the other party, or (2) that there are special equitable considerations that obviate the need for the parties to be in the status quo." *Boyter v. MCR Constr. Co.*, 673 S.W.2d 938, 941 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (citations omitted).

A contract procured by fraud is voidable, not void. *PSB, Inc. v. LIT Indus. Tex. Ltd. P'ship*, 216 S.W.3d 429, 433 (Tex. App.—Dallas 2006, no pet.). As we explained in *PSB, Inc.*,

> If a party fraudulently induced to enter into a contract continues to receive benefits under the contract after learning of the fraud or otherwise engages in conduct recognizing the agreement as subsisting and binding, then the party has ratified the agreement and waived any right to assert the fraud as a basis to avoid the agreement. An express ratification is not necessary; any act based upon a recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it has the effect of waiving the right of rescission.

*Id.* at 433–34 (citations and internal quotations omitted).

The trial court found that Landlord made material misrepresentations in the lease proposal, including that all remodeling would be billed at Landlord's book cost and that Tenant had the right to audit any and all records and costs pertaining to the

Tenant Improvements at any time during construction. The trial court also found that these representations were false; Landlord knew they were false at the time they were made; Landlord intended Tenant to act on the representations; Tenant relied on the representations; and Tenant was injured as a result.

The trial court heard Hilliard's testimony that without the "book cost" provision, Tenant would not have executed the lease. The evidence showed that Tenant began questioning the construction costs and requesting documentation from Landlord in mid-2015, culminating in a July 2015 meeting between the parties to discuss at least one estimate from Garcia Remodeling, LLC that, according to the subsequent auditor's report, had been "marked up" by Landlord to include "soft costs" rather than reflecting Landlord's "book cost" as provided in the lease. Trevino testified that Landlord marked up the invoice from Garcia by $130,813.00, and that Landlord intended Tenant to rely on the marked up invoice to make payment. In February 2018, Tenant filed its counterclaim alleging Landlord's knowing and intentional misrepresentations regarding construction costs under the lease.

The trial court found, based on the auditor's report and Trevino's testimony, that Landlord marked up Garcia's estimate by $130,813.00 and did not inform Tenant of the markup. The trial court also found that the marked-up estimate did not represent Landlord's book cost and that it was a material misrepresentation. Based on the same evidence, the trial court also found that Landlord never intended to bill Tenant at Landlord's actual book cost. We conclude there is legally and factually

sufficient evidence to support the trial court's findings and conclusions regarding Landlord's fraud.

Nonetheless, the trial court also found and concluded that Tenant breached the lease by failing to pay rent due under the lease from October 2016 to May 2017, and did not find or conclude that the lease was void. Tenant argues it is not bound by the fraudulently-induced lease. It argues it had no duty to pay rent because it never consented to the lease, and Landlord never sought equitable relief to compensate it for Tenant's use of the premises.

Among other arguments, Landlord responds that Tenant ratified the lease. Landlord pleaded the affirmative defense of ratification and offered evidence that Tenant continued to recognize the lease as valid after becoming aware that Landlord's invoices for the remodeling costs did not represent "book cost" as provided in the lease. *See PSB, Inc.*, 216 S.W.3d at 423–44 (continuing receipt of benefits after learning of fraud ratifies contract). Landlord relies on the trial court's findings, unchallenged by Tenant, that Tenant "consistently and continuously occupied, operated its business out of, and otherwise used the Premises through the January 2020 trial of this cause"; continuously paid rent pursuant to the lease's terms, other than the eight-month period between October 2016 and May 2017; "has otherwise complied with certain other Lease obligations from the Lease's commencement through trial of this matter"; and "has sought legal action to enforce the terms of the Lease, including through trial."

Tenant filed its original and amended counterclaims seeking damages, but not rescission, for Landlord's fraudulent inducement. The trial court found that Tenant had been damaged by Landlord's fraud in the amount of $62,077.50, and awarded that amount in actual damages to Tenant in its judgment.

We conclude Tenant did not establish its right to the remedy of rescission as a matter of law. *See Dow Chem. Co.*, 46 S.W.3d at 241. Tenant retained benefits received under the lease by its uninterrupted use of the premises after learning of Landlord's fraud. *See Boyter*, 673 S.W.2d at 941; *PSB, Inc.*, 216 S.W.3d at 433–34. We decide Tenant's first cross-issue against it.

### 3. Landlord's breach of contract

In its second cross-issue, Tenant contends the trial court erred by awarding damages to Landlord because Landlord committed a prior material breach excusing Tenant from performance. Tenant argues Landlord committed a material breach of the lease by "(1) submitting invoices which reflected expenses outside of the Landlord's book costs for the improvements, and (2) by interfering with [Tenant's] audit rights."

"[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam) (internal quotation omitted). "By contrast, when a party commits a

nonmaterial breach, the other party is not excused from future performance but may sue for the damages caused by the breach." *Id.* (internal quotation omitted).

The contention that a party is excused from its contract performance by the other party's prior material breach is an affirmative defense. *701 Katy Bldg., L.P. v. John Wheat Gibson, P.C.*, No. 05-16-00193-CV, 2017 WL 3634335, at *5 (Tex. App.—Dallas Aug. 24, 2017, pet. denied). Tenant pleaded "prior material breach" as an affirmative defense in its first supplemental answer. Accordingly, Tenant bore the burden of proof at trial, and on appeal must show that the evidence conclusively established all vital facts in support of the issue or that the trial court's findings are against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 241–42.

A party asserting an affirmative defense in a bench trial must request findings in support of that defense in order to avoid waiver on appeal. *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 785 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Tenant did so, requesting findings that Landlord's actions in marking up invoices and sending them to Tenant for payment, as well as Landlord's intent to preclude Tenant from auditing construction costs or knowing actual costs, were material breaches of the lease.

The trial court's findings of fact and conclusions of law, however, did not include Tenant's proposals regarding material breaches of the lease. If the trial court's findings do not do not include any of the elements of the affirmative defense

asserted, the party must specifically request additional findings relevant to the defense. *Cooper v. Cochran*, 288 S.W.3d 522, 531 (Tex. App.—Dallas 2009, no pet.). Tenant did not request additional findings. Instead, Tenant filed a motion to enter judgment requesting that the trial court "enter a judgment consistent with the Findings of Fact and Conclusions of Law." Consequently, Tenant has waived any error with respect to his affirmative defense of a prior material breach. *See id.*

Even if Tenant has not waived its complaint, however, we conclude there was legally and factually sufficient evidence to support the trial court's failure to find, for purposes of Tenant's breach of contract claim, that the breach was material. Whether a breach is material is ordinarily a fact question. *Bartush-Schnitzius Foods Co.*, 518 S.W.3d at 436. The supreme court recognizes five factors relevant to the materiality determination; most notably here, "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 199 (Tex. 2004) (per curiam).[1]

---

[1] The materiality factors include: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; and (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. *Mustang Pipeline*, 134 S.W.2d at 199.

The evidence relevant to these factors supports the trial court's decision to award damages to Tenant for Landlord's fraud rather than rescinding the lease. The trial court's finding of fact 38 provided:

> Since November 1, 2015, [Tenant] has continuously occupied the Premises; had continuously kept company property on the Premises; has continuously worked and had employees present on a regular basis at the Premises; (other than the below-described eight month rent abatement at issue in this case) has continuously paid rent pursuant to the terms of the Lease; and has otherwise complied with certain other Lease obligations from the Lease's commencement through trial of this matter. Additionally, by way of its counterclaims discussed below, [Tenant] has sought legal action to enforce the terms of the Lease, including through trial.

The trial court also found that from October 2016 to May 2017, Tenant "continued to occupy and use the Premises without paying rent."

The evidence supports the trial court's findings that despite Landlord's fraud regarding billing at book cost and Tenant's right to audit, Tenant had uninterrupted possession and use of the premises under the Lease. Although Tenant was not able to undertake its own audit as it contracted to do, the independent auditor chosen by the parties ultimately determined the amount of damages Tenant incurred, and Tenant accepted the auditor's findings as conclusive.

Considering the evidence in light of the *Mustang Pipeline* factors, we conclude there was legally and factually sufficient evidence to support a finding that Tenant failed to establish a material breach of the lease by Landlord that discharged Tenant's contractual duty to pay rent. *See Mustang Pipeline Co., Inc.*, 134 S.W.3d at 199. Instead, there was legally and factually sufficient evidence to support a

finding of a nonmaterial breach by Landlord, for which Tenant was awarded damages. *See Bartush-Schnitzius Foods Co.*, 518 S.W.3d at 436.

We also note that the lease explicitly addresses the effect of a breach by Landlord on Tenant's obligation to pay rent. Lease paragraph 24(p) provides in relevant part,

> Tenant's obligation to pay rent hereunder is not dependent upon the condition of the premises or the performance by Landlord of its obligations hereunder, and, except as otherwise expressly provided herein, Tenant shall continue to pay the rent, without abatement, setoff, [or] deduction, notwithstanding any breach by Landlord of its duties or obligations hereunder, whether express or implied.

This unambiguous language provides that Landlord's failure to perform any of its obligations does not excuse Tenant's failure to timely pay rent. *See Barton Food Mart, Inc. v. Botrie*, No. 03-17-00292-CV, 2018 WL 5289538, at *7 (Tex. App.—Austin Oct. 25, 2018, pet. denied) (prior material breach defense not available to tenant where lease included unambiguous provision that landlord's failure to perform its obligations did not excuse tenant's failure to pay rent).

For these reasons, we conclude that Tenant did not conclusively establish its affirmative defense that its performance was excused by Landlord's prior material breach and the trial court's findings on the issue are not against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 241–42. We decide Tenant's second cross-issue against it.

## B. Landlord's issues

### 1. Interest

In its first issue, Landlord contends the trial court erred by failing to award prejudgment and postjudgment interest on the $258,257.56 the trial court found as Landlord's actual damages. We review the trial court's decision regarding the assessment of prejudgment and postjudgment interest for an abuse of discretion. *DeGroot v. DeGroot*, 369 S.W.3d 918, 926 (Tex. App.—Dallas 2012, no pet.).

In its operative petition, Landlord pleaded for "pre- and post-judgment interest to the maximum extent allowed by contract or law." Paragraph 5 of the Lease provides that "[a]ll payments required of Tenant hereunder shall bear interest from the date due plus the 5 day grace period until paid at the maximum lawful rate . . . ."

"Prejudgment interest and postjudgment interest compensate judgment creditors for their lost use of the money due them as damages." *Phillips v. Bramlett*, 407 S.W.3d 229, 238 (Tex. 2013). "Prejudgment interest performs this function for the time period from the date the damages are incurred through the date of judgment; postjudgment interest, from the date of judgment through the date the judgment is satisfied." *Id.* "In a breach of contract case, the prejudgment interest rate is the same as the postjudgment interest rate." *E.F. Johnson Co. v. Infinity Global Tech.*, No. 05-14-01209-CV, 2016 WL 4254496, at *11 (Tex. App.—Dallas Aug. 11, 2016, no pet.) (mem. op.).

"A money judgment of a court in this state must specify the postjudgment interest rate applicable to that judgment." TEX. FIN. CODE § 304.001. Postjudgment interest accrues beginning on the date the judgment is rendered. *Id.* § 304.005(a); *see also Phillips*, 407 S.W.3d at 238; TEX. FIN. CODE § 304.002.

The trial court found and concluded that the lease was "a valid, enforceable contract," that Landlord "performed or tendered performance of its contractual obligations under the Lease," and that Tenant breached the lease "by failing to pay rent for the time period October 2016 to May 2017 and thereby caused damages to [Landlord], totaling $258,257.56 before interest." The trial court's judgment, however, does not include an award of either prejudgment or postjudgment interest to either party. In its request for amended findings of fact and conclusions of law, Landlord objected to the trial court's failure to award interest on the sum due from Tenant.

Because the parties' valid contract requires payment of prejudgment interest and the finance code requires payment of postjudgment interest, we conclude the trial court erred by failing to award prejudgment and postjudgment interest to Landlord. *See E.F. Johnson Co.*, 2016 WL 4254496, at *11 ("Postjudgment interest—and therefore prejudgment interest—in a case in which the contract provides for interest is the lesser of the interest rate specified in the contract or eighteen percent a year."). We sustain Landlord's first issue.

## 2. Attorney's fees

In its second issue, Landlord contends the trial court erred by failing to award its attorney's fees. Landlord relies on the trial court's findings that (1) the lease is a valid, enforceable contract, (2) Tenant breached the lease by failing to pay rent from October 2016 to May 2017, (3) as a direct and proximate result of Tenant's breach, Landlord incurred $258,257.56 in actual damages "comprised of eight months' rent improperly withheld" by Tenant, and (4) Landlord is entitled to recover $258,257.56 in actual damages from Tenant.

The lease provides that "Tenant's failure to promptly pay Rent when due or within [a] five (5) day grace period" is an "Event of Default," and "[u]pon any Event of Default, Tenant shall pay to Landlord all costs incurred by Landlord (including court costs and reasonable attorneys' fees and expenses) in . . . enforcing, or advising Landlord of, its rights, remedies, and recourses arising out of the Event of Default." In its operative petition, Landlord pleaded for its reasonable and necessary attorney's fees "through trial and any appeal pursuant to the Lease, . . . Chapter 38 of the Texas Civil Practice & Remedies Code, or other applicable law."

Landlord's CEO Leobardo Trevino testified that as a result of Tenant's failure to pay rent, Landlord was required to engage an attorney to represent it in enforcing its rights under the lease. Tenant's President Sterling Hilliard acknowledged that "[a]s it reads here," the lease provided for payment of Landlord's attorney's fees if the court found that Tenant failed to pay rent when it was due under the lease. Both

–18–

parties filed affidavits in support of their attorneys' fees after trial along with their post-trial briefing, requested findings, and motions for judgment.

An appellate court reviews a trial court's decision to award attorney's fees for an abuse of discretion. *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 657 (Tex. App.—Dallas 2015, no pet.). A trial court has discretion to fix the amount of attorney's fees, but it does not have discretion to deny attorney's fees entirely if an award of fees is required under the terms of the parties' agreement or by statute. *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *31 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (mem. op.).

Here, Landlord established that an award of fees was required under the lease. Consequently, the trial court erred by failing to include an award of attorney's fees in its judgment. *See id.* We sustain Landlord's second issue.

### 3. Auditor's fees

In its third issue, Landlord argues the award of auditor's fees to Tenant should have been designated as "costs" under civil procedure rule 172, not as actual damages. Rule 172 provides that "[w]hen an investigation of accounts or examination of vouchers appears necessary for the purpose of justice between the parties to any suit, the court shall appoint an auditor or auditors to state the accounts between the parties and to make report thereof to the court as soon as possible." TEX. R. CIV. P. 172. The rule includes requirements for the report and a date for filing exceptions. *See id.* The rule concludes, "The court shall award reasonable

compensation to such auditor to be taxed as costs of suit." *Id.* Landlord argues that the auditor's fees, as costs of court, are not "damages." *See In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 173 (Tex. 2013) (although court costs, like attorney's fees and prejudgment interest, "make a claimant whole," they do not "qualify as compensatory damages").

Landlord contends that we review this issue de novo because it requires construction of rule 172. *See Shook v. Shook*, No. 01-09-00649-CV, 2010 WL 2025772, at *1 (Tex. App.—Houston [1st Dist.] May 20, 2010, no pet.) (mem. op.) ("The dispositive issue in this appeal deals with the application of the rules of civil procedure to undisputed facts, which is a question of law we review de novo."). We conclude, however, that the issue presents a mixed question of law and fact, that is, given the circumstances under which the audit was agreed to, ordered, and occurred, does the rule preclude the trial court from awarding damages equivalent to the half of the auditor's fee that was paid by Tenant?[2] Consequently, in our review we defer to the trial court's factual determinations supported by the record and review legal conclusions de novo. *See Henry v. Smith*, 637 S.W.3d 226, 239 (Tex. App.—Fort Worth 2021, pet. denied) ("Where the trial court's findings involve mixed questions

---

[2] "Whether an auditor should be appointed is left to the discretion of the trial court, and its action is revised only on a showing of gross abuse." *Padon v. Padon*, 670 S.W.2d 354, 360 (Tex. App.—San Antonio 1984, no writ) (internal quotation omitted). Further, although the parties' agreed motion and the trial court's order referenced rule 172, neither included any provision about payment of the auditor's fees, and the evidence admitted at trial showed that the parties had agreed to split the auditor's fees, in contrast to rule 172's provision to tax the fees as costs.

of law and fact, we defer to the trial court's factual determinations if supported by the evidence.").

Landlord relies on the parties' "Agreed Motion for Appointment of Rule 172 Auditor" in support of its argument. As background in the motion, the parties recited that Landlord filed suit for "failure to pay rent, construction costs, and related charges," that Tenant filed a counterclaim alleging that Landlord "misrepresented and failed to properly account for expenses incurred for improvements made on the Premises," and that as part of its counterclaim, Tenant requested an audit of Landlord's records regarding improvements to the premises.

The parties explained that after an unsuccessful mediation, Landlord produced "a large volume of accounting records relating to the project." The parties agreed that "the best and most efficient method" for resolving their dispute was to engage "an independent CPA with expertise in forensic construction accounting" to review and reconcile the records and report to the court. The parties agreed to recommend Bradford L. Bright, CCA, CCP of Veritas Advisory Group, Inc. to serve as auditor.

Accordingly, the trial court signed the agreed order appointing Bright to serve as auditor on August 14, 2018. Neither the motion nor the order, however, addressed payment of Bright's fees or their assessment as costs under rule 172. In finding of fact 51, the trial court found that "The parties agreed to the appointment [of an auditor] and [to the] audit process, and to accept the Auditor's findings as conclusive." And in finding of fact 53, the trial court found that "At the time of his

appointment—and as not only reflected in correspondence from the Auditor himself confirmed by Mr. Hilliard's trial testimony—the parties agreed to split the Auditor's fees and costs."

Bright undertook the audit and filed his report several months later, concluding that Tenant had overpaid Landlord and was due a credit of $9,322.85. Bright's report was offered as an exhibit by both parties and was admitted into evidence at trial. Neither party disputed Bright's conclusions. Bright ultimately charged a fee of $124,155.00 for his services, of which Tenant paid half. Landlord argues that under rule 172, Tenant's $62,077.50 payment to the auditor constituted costs, not damages.

Tenant responds that the auditor's appointment became necessary only because Landlord breached its obligations under the lease. Exhibit C to the lease, entitled "Landlord's Work," provided in relevant part:

> Landlord shall provide "turnkey" improvements to the Premises. . . . Landlord and Tenant shall share the cost of tenant improvements (at Landlord's book cost) as follows: Seventy percent (70%) to Landlord; and thirty percent (30%) to Tenant. . . . All remodeling will be billed at Landlord's book cost. Each invoice shall be paid in the preceding proportions by Landlord and Tenant within ten (10) days of receipt of the invoice. **Tenant shall have the right to audit any and all records regarding costs pertaining to the improvements at any time during construction.** (Emphasis added)

The auditor's report reflects that Tenant "activated the audit clause" in the lease in June 2015, and "requested access to the backup documentation for costs incurred." As support, the auditor attached emails between Landlord and Tenant in

which Tenant requested invoices and other supporting information regarding remodeling work on the premises.

Hilliard also testified at trial that Tenant requested supporting documents from Landlord in June 2015. He explained that Tenant had ten to twenty of its own accounting personnel, including a CFO, an accounting manager, and a CPA, who could perform an audit internally. He testified, however, that Tenant was unable to utilize its own personnel to conduct the audit because Landlord failed to provide the requested documentation as the lease required.

Hilliard testified in detail about the expenses for which Tenant was unable to obtain the necessary documentation from Landlord. Hilliard explained that Tenant filed its counterclaim to force Landlord to provide the documents for an audit as required by the Lease.

The auditor explained the "disconnect between the parties" that led to the need for the audit:

> It was not [Landlord's] intention to provide any supporting documentation for its soft costs or for payments [Landlord] made to Garcia or its other contractors. Instead, [Landlord] intended to provide [Tenant] only invoices for Garcia's work based upon a completion percentage of Garcia's marked up estimate and percentage completion for invoices from Aire Design and PAC. This approach by [Landlord] was directly inconsistent with the audit language contained in the Lease. [Tenant] in turn expected and requested backup documentation for all costs incurred by [Landlord] consistent with the audit language contained in the Lease. This disconnect between the parties is the basis for the final audit conducted by [Bright] to establish what costs were incurred by [Landlord] consistent with the Lease Agreement and to be shared by [Tenant].

–23–

The trial court made detailed findings of fact about retaining and paying the auditor, and about the auditor's investigation and fees charged. We have quoted finding of fact 53 above, regarding the parties' agreement to split the auditor's fees and costs. Findings of fact 54 and 55 also addressed these issues, and were supported by the auditor's report:

> 54. The Auditor and his staff spent hundreds of hours on the project and charged $124,155.00 in fees conducting a detailed, months-long audit process by which—through comprehensive review of project-related financial records and multiple in-person meetings with representatives of the parties—the Auditor reconstructed the accounting from the three-year old construction project.
>
> 55. [Landlord's] conduct in marking-up Garcia's estimates and invoices and Aire Designs invoices and forwarding those marked-up invoices to [Tenant] for payment without informing [Tenant] of the mark-up along with the fact that the marked-up invoices totaled $234,147.80, further compounded by [Landlord's ] scheme to mask its actions by moving $130,813 to Garcia in October and November 2016 only to have the funds returned in eight days constitutes a course of action on the part of [Landlord] which clearly and convincingly establishes that [Landlord] committed fraud against [Tenant] both in inducing [Tenant] into the Lease and under the Lease. (Defendant's Exhibits 1, 2, 3, 4, 5, 8 and 9).

The trial court's conclusions of law 6 through 9 addressed fraud by Landlord. The court concluded that Landlord made material misrepresentations in both the lease proposal and the lease regarding Tenant's right to audit and the improvements being billed at Landlord's book cost; Landlord committed fraud under the lease "by marking-up the Garcia invoices"; and Tenant had been damaged as a result of the fraud "in the amount of $62,077.50 paid to Veritas for the audit services."

Deferring to the trial court's factual determinations supported by the evidence, *see Henry*, 637 S.W.3d at 239, we conclude that there was legally and factually sufficient evidence to support the trial court's findings and conclusions that the auditor's fees were damages resulting from Landlord's fraud rather than costs incurred under rule 172. We decide Landlord's third issue against it.

### 4. Exemplary damages

In its fourth issue, Landlord contends the trial court's judgment should be modified to remove the award of exemplary damages to Tenant[3] because there are no actual damages to support the award. *See, e.g., Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 925 (Tex. App.—Dallas 2013, no pet.) ("We agree with the proposition that exemplary damages generally are recoverable only upon proof of actual damages."); *see also* TEX. CIV. PRAC. & REM. CODE § 41.004(a) (exemplary damages may be awarded only if damages other than nominal damages are awarded). Landlord contends that neither the $9,322.85 accounting overpayment that Landlord credited to Tenant before trial nor the auditor's fees were actual damages that could serve as a basis for an exemplary damages award.

As we have discussed, however, we conclude that Tenant incurred actual damages in the amount of $62,077.50, as found by the trial court to have resulted

---

[3] The trial court concluded that Tenant incurred "$90,469.01 in reasonable and necessary attorney's fees to pursue its causes of action for fraud and fraudulent inducement" and that Tenant was entitled to recover this amount in exemplary damages against Landlord. As we have noted, both parties filed evidence of their attorney's fees by affidavit after trial.

from Landlord's fraud. Because there are actual damages to support the exemplary damages awarded to Tenant, we decide Landlord's fourth issue against it. *See* TEX. CIV. PRAC. & REM. CODE § 41.004(a).

## CONCLUSION

The portions of the trial court's judgment awarding actual damages to Landlord and actual and exemplary damages to Tenant are affirmed. We reverse the portion of the trial court's judgment denying awards of prejudgment interest, attorney's fees, and postjudgment interest to Landlord, and remand the case to the trial court for determination of these amounts.

/Leslie Osborne//
LESLIE OSBORNE
JUSTICE

210158f.p05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

2100 RICCHI, LLC, Appellant

No. 05-21-00158-CV          V.

HILLIARD OFFICE SOLUTIONS OF TEXAS, LTD. AND THE HILLIARD COMPANIES, LLC, Appellee

On Appeal from the 193rd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-17-02672. Opinion delivered by Justice Osborne. Justices Myers and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment denying awards of prejudgment interest, attorney's fees, and postjudgment interest to 2100 Ricchi, LLC. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant 2100 Ricchi, LLC recover its costs of this appeal from appellees Hilliard Office Solutions of Texas, Ltd. and The Hilliard Companies, LLC.

Judgment entered this 3rd day of August, 2022.